WILLIAM H. GRIMDITCH, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 78002, 78003, 78004, 78005, 78006, 78015, 78016, 78047.
Promulgated February 23, 1938.

*Charles C. Norris, Esq.,* and *Philip D. Dechert, Esq.,* for the petitioners.
*R. P. Hertzog, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: J. H. Carmine; E. W. Shepherd; Thomas A. Kennally; D. J. MacKillop; Estate of Mrs. C. L. McWhorter, Deceased, Charles L. McWhorter, Executor; Charles L. McWhorter; and Louis M. Kelly.

### OPINION.

VAN FOSSAN : The issue presented is whether the amounts of money received by the petitioners upon redemptions of first and second preferred stock of the corporation in 1931 are taxable as dividends within the purview of section 115 (g) of the Revenue Act of 1928.[1] The answer to this question depends upon whether in point of time and manner the redemptions were essentially equivalent to the distribution of taxable dividends. It is a question of fact. *Commissioner* v. *Babson*, 70 Fed. (2d) 304; certiorari denied, 293 U. S. 571.

The courts and the Board have consistently held that each case of the type here presented must stand on its own particular facts. No definite rule of construction has been laid down by which to determine all cases. *Hyman* v. *Helvering*, 71 Fed. (2d) 342 (D. C. App.); *Albert T. Perkins*, 36 B. T. A. 791; *Orie R. Kelly*, 36 B. T. A. 507.

The court, in *McGuire* v. *Commissioner*, 84 Fed. (2d) 431, observed:

> Neither artifice, subterfuge or bad faith need be present to bring a transaction within the meaning of the statute here involved, for as we read the law a taxpayer may well act with the utmost good purpose and without evil intent and yet the transaction may in effect be the equivalent of the distribution of a taxable dividend.

Thus the intention or motive of the corporation is not controlling. The crux of the statute is whether in making such redemptions the corporation is thereby in effect distributing its earnings, the shareholders thus avoiding the taxes that are due on such distribution.

It may be conceded that the plan conceived by the corporation in the present cases gradually to diminish the interests of the older stockholders in the corporation and increase the interests of the younger men was accomplished by the transactions, but a business plan wholly legitimate in its inception may so operate as to effect a distribution essentially equivalent to a taxable dividend. The results are controlling. *Hyman* v. *Helvering, supra.*

With this in mind a review of the facts is enlightening. The preferred stock, both first and second issues, was redeemed not once but

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \*

 (g) *Redemption of stock.*—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In case of the cancellation or redemption of stock not issued as a stock dividend this subsection shall apply only if the cancellation or redemption is made after January 1, 1926.

twice in the taxable year. The stock first redeemed was simultaneously reissued and in the same year again redeemed and then reissued. Also, simultaneously with the first redemption of preferred, a dividend was declared in common stock. Thus the corporation during this year paid $2,200,000 in cash to its preferred stockholders by means of the stock redemptions, as compared with $694,992 paid in cash as dividends on all its stock. The corporation's net income for the year was in excess of $4,000,000. In 1930, when the net income was in excess of $4,500,000, only $269,692 was paid out as cash dividends. See *J. Natwick*, 36 B. T. A. 866.

In January 1931 there were 20,000 shares of common stock and 5,000 shares each of first and second preferred stock outstanding, while at the end of the year after the two redemptions of the preferred stock, effecting the distribution of $2,200,000 in cash, had occurred there were outstanding 29,824.5 shares of common stock and 4,970.75 shares each of first and second preferred. In other words, the preferred stock at the end of 1931, after the two redemptions, was reduced less than 1 percent and the common stock outstanding was increased . by almost 50 percent. See *Hill* v. *Commissioner*, 66 Fed. (2d) 45, affirming 27 B. T. A. 73.

Moreover, there were accumulated undivided earnings largely in excess of the amounts distributed. The surplus on hand January 1, 1931, was more than three times greater than the preferred stock redeemed shortly thereafter and there was but slightly less surplus on hand after the second redemption of preferred stock in the latter part of the year. At the time of the first redemption in 1931 the corporation had a surplus of $7,737,731.78. After the second redemption in that year there remained in the surplus account the sum of $7,696,179.11.

Although cash dividends were paid during the period from 1917 to 1931 in the aggregate amount of $2,026,144.42, of which $694,992 was paid in 1931, the earnings of the corporation during the same period totaled $17,967,562.41, of which $4,072,227.73 was earned in 1931. See *C. A. Goding*, 34 B. T. A. 201, where the stock redeemed represented a distribution of earnings of approximately three times the amount distributed as cash dividends. During this period from 1917 to 1931 total preferred stock redemptions effected total distributions to stockholders of $3,575,000, of which, as above pointed out, $2,200,000 was paid in 1931.

When these facts are faced it would seem beyond question that the redemptions of preferred stock accomplished a distribution of profits.

Petitioner Grimditch, for example, at the end of·the year 1931, without considering compensation stock, had substantially increased

holdings of both common and preferred stock and received $45,-787.50 in cash by means of the two redemptions.

The contention that the redemptions should not be treated as dividends, because at the time they were made some of the preferred stockholders were not owners of common stock, lacks merit. The stockholdings need not be identical. Moreover, in all of the instances referred to, the record owners are the wives of the holders of substantially the same proportion of common stock, which had been turned over to them as gifts shortly before the stock was redeemed. Otherwise, there is little difference in the percentage ownership of common and preferred stock. See *Randolph* v. *Commissioner*, 76 Fed. (2d) 472.

Furthermore, as was held in the case of *Hill* v. *Commissioner*, *supra*, it is not essential that there be a direct relationship between the issuance of the stock and its subsequent redemption.

The petitioners have pointed to many cases where redemptions have been held not essentially equivalent to taxable distributions. They rely strongly on the recent case, *H. F. Asmussen*, 36 B. T. A. 878, where the corporation had a "plan" with somewhat similar objectives to that in the present cases. Aside from the similarity of the plans the facts in the two cases have little in common. The facts in that case revealed no such results as we find here. The other decisions cited also turn on the facts therein present. We find none that suggests that, under the facts of these cases, petitioners' contentions should be sustained.

We are of the opinion that the redemptions of first and second preferred stock of the corporation during 1931 were made at such time and in such manner as to be essentially equivalent to the distribution of taxable dividends.

Reviewed by the Board.

*Decisions will be entered for the respondent.*